**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

```
BLACKSMITH INVESTMENTS, LLC,         )
                 Plaintiff,          )
v.                                   )     C. A. No. OS-11567-NG
                                     )
CIVES STEEL COMPANY,                 )
                 Defendant,          )
```

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Blacksmith Investments, LLC., submits their memorandum of law in support of their Motion in Opposition to Defendant Cives Steel Company Motion to dismiss the Complaint.

**PRELIMINARY STATEMENT**

The Court invited Blacksmith to re-file, however, the passage of time, required that a new Complaint be filed.  Because the Plaintiff has had difficulty acquiring documents from BSPE, Blacksmith at the time had no written Cives-BSPE contract nor a separate written agreement with Boston Steel & Precast Erectors, Inc. that Blacksmith LLC was entitled to the BSPE accounts receivables.  A new Complaint was filed with the Court.  The Complaint was amended by removal of Clark/Suffolk Construction under agreement that Cives would not file a motion to dismiss, but would retain their affirmative defense of assignment.  Thus, counsel for the Plaintiff is surprised to be in the position of defending this motion to dismiss, given the agreed to condition of removal of Suffolk from the Complaint.

The Amended Complaint provides that Citizens Bank is lien holder of the BSPE assets.  There is no assignment of Cives funds.  There is no transfer of Cives Steel Company funds.  Cives Steel Company has not proved that Cives funds were transferred by BSPE, nor that an assignment exists as to Cives Steel Company funds.  If this is a question of fact, the Motion must be denied.

Blacksmith, LLC does not claim the basis of their rights are based upon assignment, i.e., transfer of Cives Steel funds, assignment of construction work to others.

Blacksmith says that it is entitled to the rights of Citizens Bank to the assets of BSPE as lien holder.  The "new" Blacksmith Complaint does not allege "assignment."  The Amended Complaint, paragraph number five alleges Blacksmith is "lien holder."  Citizens

Bank was "lien holder", and when Blacksmith purchased the BSPE Note, Blacksmith stepped into the shoes of the Citizens Bank, a lien holder.

Blacksmith says that it is entitled to the accounts receivables of BSPE, including Cives Steel Company, under the terms of paragraph 6 BSPE Receivables, a settlement agreement with Bernard MacInnis, President of BSPE dated September 29, 2004. See Exhibit "2".

### Blacksmith is lien holder

Citizens Bank is lien holder. See Exhibit "1". Blacksmith Investments paid the Citizens-BSPE Note and acquired the lien holder rights of Citizens Bank. To the extent Blacksmith is "assignee" it is an assignment of all assets, including receivables from the Bank to Blacksmith, not an assignment from Boston Steel & Precast Erectors, Inc. to Blacksmith.

### Blacksmith is a Holder in Due Course

Blacksmith gave value and consideration. See Exhibit "1". The Note paid by Blacksmith, is an instrument transferred for value. The instrument (Note) transferred for value as the transferee, Blacksmith, acquired a security interest in the BSPE assets. Blacksmith gave "consideration" of $393,935.85 for payment of the Boston Steel & Precast Erectors, Inc. Note. Blacksmith acquired the common-law or statutory banker's lien rights to BSPE assets. MGLA 106 sect 3-303(a)(2)

Blacksmith is entitled as lien holder to the assets of BSPE, as alleged in the Complaint. Those assets include debtors accounts receivables. Cives Steel Company is a debtor of Boston Steel & Precast Erectors, Inc.

### Blacksmith has addressed the issues in the previous Complaint.

No procedural issues exist. The defense of assignment need not be addressed other than to elicit the facts. There was no assignment of the work or transfer of funds by BSPE to Citizens Bank. Promise of collateral is not transfer of Cives Steel Company funds. Blacksmith is a lien holder, just as Citizens Bank sought Boston Steel & Precast Erectors, Inc. assets as lien holder, of debtors accounts (Cives receivables due BSPE). No transfer of Cives Steel Company funds exists from BSPE to Blacksmith. The transfer of accounts receivables as an integral part of BSPE assets was from Citizens Bank (when BSPE defaulted on the Bank Note) to Blacksmith.

### Blacksmith is entitled to recover under unjust enrichment.

2

**The Complaint states the Relevant Facts:**

Plaintiff's Complaint identifies the facts necessary to support the equitable count of unjust enrichment.

Boston Steel & Precast Erectors, Inc. erected steel under a contract with Cives Steel Company. Boston Steel & Precast, Inc. erected that steel for the Manulife Financial Center, Boston, Massachusetts.

**The following allegations are noted in the Complaint:**

1. Boston Steel & Precast Erectors, Inc., hereinafter BSPE, contracted with Cives for the Manulife Financial Center building project, Boston, Massachusetts. (paragraph 7)

2. Plaintiff Cives Steel Company has received value for labor and materials provided by Boston Steel & Precast Erectors, Inc. Cives Steel Company Contract.

5. Plaintiff Blacksmith Investments, LLC says that defendant Cives Steel has not paid for value received from the labor and materials furnished by Boston Steel & Precast Erectors, Inc. at the Manulife Financial Center project. (paragraph 25)

6. Blacksmith Investments, LLC says that Defendant Cives Steel has been enriched by retention of the labor, value, and product provided by Boston Steel & Precast Erector's expense by receipt of requested goods without payment off same. (paragraph 28)

7. Blacksmith Investments, LLC has been damaged as lien holder recipient of the rights entitled to Boston Steel & Precast Erectors, Inc. to enforce receipt of unjust enrichment, in the amount of $213,073.79. (paragraph 29)

8. Plaintiff, Blacksmith, holds all right and interest of Boston Steel & Precast as lien holder to the debtor assets.

### Unjust Enrichment Argument

Unjust enrichment may be recognized where third persons benefit from contract between two others, but even when such situations exist and one of the contracting parties defaults, other party does not automatically have unjust enrichment claim against third party, but question remains whether, under all circumstances, justice requires making third party pay. **Taylor Woodrow Blitman Construction Corporation v. Southfield Gardens Company, et al, 534 F. Supp. 340, United States District Court, D. Massachusetts.**

Unjust enrichment has been defined as the "retention of money

3

or property of another against the fundamental principles of justice or
equity and good conscience." **66 Am.Jur.2d, Restitution and Implied
Contracts s. 3 p. 945.**

Typically, unjust enrichment involves a direct benefit conferred
by one party by another. For example, where a contractor builds an
addition onto the owner's home, and no contract exists, the court may
find that the owner is unjustly enriched by the value of the addition.
FN15, **Taylor Woodrow Blitman v. Southfiled Gardens Co., 534
F. Supp. 340.**

To maintain a claim of unjust enrichment a plaintiff (Blacksmith
Investments) must show that the defendant (Cives Steel Companyl) has at
the Plaintiff's expense (Blacksmith as lien holder for Boston Steel &
Precast Erectors) been enriched and unjustly so, such as when the
defendant receives requested goods or services without paying and
compensation thereof. **See Palmer, I Law of Restitution, s. 1.7 at 42
(1978)**

The enrichment is unjust. Boston Steel & Precast installed
structural steel for the Manulife project for Cives Steel Company.
Privity of contract is not necessary for unjust enrichment to apply.
In fact, lack of contract is the basis for this equitable remedy use.

There is no other adequate remedy of law. Blacksmith
Investments, LLC cannot maintain a mechanic's lien as against Manulife.
Blacksmith is not signatory to a written contract wherein Cives is
contractor. The statutory requirements to maintain a mechanic's lien
is not possible as a matter of law. It is this very fact situation
that "unjust enrichment" is applicable, where the contractor has
unjustly been enriched and there is no adequate remedy at law for a
third party (Blacksmith). 62A.L.R. 3d 288

> "§ 2. Basic considerations; right to quasi-
> contractual recovery in general
>
> As a broad general rule of law, it has been widely
> held or recognized that, apart from unjust enrichment
> or from any special statutory rights or remedies, a
> subcontractor who has furnished labor or materials
> for the construction or repair of some form of
> improvement on the lands of another has no right to a
> personal judgment against the landowner where there
> is no contractual relationship between them.
>
> Confronted with such a rule, and usually faced also
> with the impracticality or impossibility of
> recovering full compensation for their labor or

4

materials from the general contractors with whom they
dealt, or of recovering it through assertion of their
mechanic's lien rights, a number of subcontractors
have sought to avail themselves of what may perhaps
be termed the "unjust enrichment exception" to the
general rule, and upon such theory of unjust
enrichment, to impose personal liability, in an
action in quasi contract, upon the landowners whose
premises were allegedly benefited by the furnishing
of such labor and materials.

Without attempting to do more than to refer generally
to some of the theoretical bases underlying the
doctrine of quasi contract, it may be sufficient,
presently, to point out (1) that liability under such
doctrine arises by implication of law from the facts
and circumstances of a given case; (2) that for quasi
contract neither an actual promise nor privity is
necessary; (3) that the obligation in quasi contract
arises not from the consent of the parties, as in the
case of contracts express or implied in fact, but
from the law of natural justice and equity, so that
where a case shows that it is the duty of the
defendant therein to pay, the law imputes to him a
promise to fulfill that obligation; and (4) that the
duty which thus forms the foundation of a quasi-
contractual obligation is most frequently based upon
the principle of unjust enrichment.

The phrase "unjust enrichment" has ordinarily been
employed by the courts to characterize the result or
effect of a failure to make restitution of, or
payment for, benefits or property received under such
circumstances as to give rise to a legal or equitable
obligation to account therefor; thus, it has
sometimes been said that the concept of quasi-
contractual liability for unjust enrichment is based
generally upon the ground that a person receiving a
benefit which it is unjust for him to retain ought to
make restitution or pay the value of the benefit to
the party entitled thereto.

Although it has been generally recognized that the
essential elements of quasi contract are a benefit
conferred upon the defendant by the plaintiff,
appreciation by the defendant of such benefit, and
acceptance and retention thereof by the defendant
under such circumstances that it would be inequitable
for him to so retain it without paying the value
thereof, yet it would seem equally clear that even
where a person has received a benefit from another,
he (the former) is liable to pay therefore only if
the circumstances surrounding its receipt and
acceptance are such that, as between the parties, it
would be unjust for him to retain it without so
paying. Hence, it has been rightfully observed that
the most significant requirement for a recovery on

5

quasi contract is that the enrichment to the
defendant must be unjust.

In dealing with the right of a subcontractor who has
dealt only with a primary, or general, contractor, to
recover in quasi contract against a land owner whose
property has been improved, in part at least, by
labor or materials furnished by such subcontractor,
the courts have not always deemed it necessary to
reiterate or discuss all of the basic principles
alluded to in the preceding paragraphs. However, in
those instances in which the courts have carefully
analyzed the problems presented by such a claimed
cause of action, they have generally concluded,
first, that the fact of lack of privity as between
the subcontractor and the landowner should not, in
and of itself, be determinative of the
subcontractor's right to recover; secondly, and as a
sort of corollary to the first conclusion, that quasi
contract may be the, or an, appropriate form of
action for presentation of the subcontractor's claim;
and thirdly, that determination for or against
recovery under such an asserted cause of action is
dependent essentially upon whether or not the facts
disclosed by the evidence in each particular case are
sufficient to establish that the landowner was, in
fact, unjustly enriched at the loss and expense of
the subcontractor.

In resolving such issue of unjust enrichment, the
courts have generally looked to what they considered
to be the "equities" in each case. Thus, in several
instances, the primary inquiry would appear to have
been whether or not any circumstances had been shown
which would reasonably have led the subcontractor to
believe that anyone other than the general
contractor, and in particular, to believe that the
landowner, would pay him for his labor and materials…
Additionally, or in other situations, the courts have
noted such factors as the opportunity which had been
available to the subcontractor to protect himself
through compliance with mechanic's lien statutes and
his failure to take advantage thereof, and such
subcontractor's failure to exhaust his remedies
against the general contractor." Emphasis added

"Unjust enrichment is a theory of recovery under the
doctrine of quasi-contract, also known as a contract
implied in law, and contractual provisions do not
constitute a defense to such a claim. **Childress
Painting and Associates, Inc. v. John Q. Hammons
Hotels Two, L.P., 106 S.W.3d 558 (Mo. Ct. App. W.D.
2003).**

Unjust enrichment is based on a theory of quasi
contract or contract implied in law. **White v. Camden**

**County Sheriffs Dept., 106 S.W.3d 626 (Mo. Ct. App. S.D. 2003)."**

Cives Steel Company has benefited from the labor and materials furnished and installed by Boston Steel & Precast Erectors, Inc.  There is no privity of contract between Cives Steel Company and Blacksmith Investments, LLC.  Cives Steel Company has been enriched by failure to pay the accounts receivables of Boston Steel & Precast Erectors, Inc. to Blacksmith Investments, LLC.

Recovery is granted where the facts support the conclusion that the contractor, Cives Steel Company, has no contract with Blacksmith, and the Cives Steel Company derives a benefit from the installation of materials and labor provided by the subcontractor (BSPE) or here Blacksmith as lien holder of the debtors assets.  And, Cives has not paid the monies to the contractor, BSPE.  Here, extra work items are disputed, and questions of material facts exist, and contract balances remain due Boston Steel & Precast Erectors, Inc.   Blacksmith Investments is entitled to all the monies due from Cives Steel Company.

> 62 A.L.R. 3d 288, "§ 3. Recovery granted
>
> In the following cases it was held or recognized that a subcontractor might recover a personal judgment, on the theory of unjust enrichment, against a landowner whose premises had been benefited by labor and materials furnished thereto by such subcontractor, even though the subcontractor had been employed by or had contracted with a general contractor and there was no privity of contract between him (the subcontractor) and the landowner.
>
> In action by subcontractors against homeowners for services, supplies, and materials rendered in connection with construction of home, subcontractors who had been hired by bank/general contractor were properly entitled to recover in quasi-contract for value of delivery of supplies and materials on open account and for installation of bricks, plumbing, heating, and air conditioning, since homeowners had clearly benefited by subcontractors' actions, and subcontractors had incurred detriment. **Federal Land Bank v Jones (1984, Ala) 456 So 2d 1."**

Contract Defenses are not considered when "unjust enrichment" is pleaded.  Privity of contract therefore will not apply here.

7

Whether mechanic's lien is in effect, whether a mechanic's lien has been applied and released, or whether a mechanic's lien may not be filed as untimely, does not impact a pleading for unjust enrichment.

> Thus, in Costanzo v Stewart (1969) 9 Ariz App 430, 453 P2d 526, the plaintiff was a subcontractor who had performed work on certain property owned by the defendant, the general contractor on the job having been one N. Prior to commencing his work, the plaintiff contacted the defendant, who assured him that money for the job was in escrow and that a check would be made to him and to N when the entire job was completed and passed by city inspectors. After the job had been completed and inspected, N wrote a check to the plaintiff for his work, but the check was not honored, and for some time thereafter the plaintiff made unsuccessful efforts to collect from both N and the defendant. At the time of trial the plaintiff had not filed any mechanic's lien, N had left the state, and the defendant had not paid anything for the plaintiffs work. Affirming a judgment holding the defendant personally liable for the reasonable value of the plaintiffs services, the court refuted the argument, inter alia, that no personal judgment for unjust enrichment would lie because no privity of contract existed between the plaintiff and the defendant. It had long been the law, declared the court, that restitution was available as a means of recovery for services rendered, or for the affixation of chattels to land, yielding benefit to another, and the same result followed where a person accepted services from another, having reason at the time to know that the other was under the belief that the recipient, or some third person, had promised compensation or was otherwise under a duty to pay therefore. Pointing out then that the trial court had found that the defendant knew that the plaintiff was concerned about his reimbursement, and that the defendant assured the plaintiff that escrow arrangements had been made, the court said that such facts established a good cause for restitution.

> Paving subcontractor was entitled to recover in unjust enrichment from property owner, since owner was benefited and subcontractor was not paid, even though subcontractor had released mechanic's lien, which was filed against lessee of property, and lessee had option to purchase property. **Ayotte Bros. Constr. Co. v Finney (1996) 42 Conn App 578, 680 A2d 330.**

> Unpaid subcontractor that built pool deck at property owners' house, but that was not entitled to construction lien based on its failure to give timely notice, was entitled to monetary judgment against property owners for unjust enrichment based on quasi-

contract theory. **Zalay v. Ace Cabinets of Clearwater, Inc., 700 So. 2d 15 (Fla. Dist. Ct. App. 2d Dist. 1997), reh'g denied, (Sept. 23, 1997).**

Owner was so active and instrumental that owner stepped into shoes of general contractor, so as to warrant subcontractor's recovery from owner on theory of unjust enrichment. **McCorry v G. Cowser Constr. (1994, Ind App) 636 NE2d 1273.**

Subcontractors were entitled to recover payment from landowner on unjust enrichment theory, where owner committed actual wrongdoing by asking subcontractors to provide labor and materials after it terminated general contractor, then refusing to pay. **Encore Const. Corp. v. SC Bodner Const., Inc., 765 N.E.2d 223 (Ind. Ct. App. 2002).**

### Count II. Quantum Meruit Implied Contract

Complaint alleges quantum meruit, a method and reason of recovery that is associated with the legal concept of "unjust enrichment".

The facts pleaded, and taken as true, and case law cited, support the conclusion that Defendant Cives Steel Company received a benefit for which it has not paid, and has been unjustly enriched.

Plaintiff Blacksmith Investments, LLC as signatory to a promissory note entitled to all the rights and remedies that the Citizens Bank was entitles to as lien holder of Boston Steel & Precast Erectors, Inc. is entitled to $213,073.79. (See paragraph 22)

Plaintiff Blacksmith Investments, Inc. also is entitled to the accounts receivables of Boston Steel & Precast Erectors, Inc. pursuant to BSPE settlement agreement with Blacksmith. Exhibit "E"

### Breach of Contract

Plaintiff Blacksmith Investments, LLC. may be said to have an implied in fact, quasi contract, under theory of restitution. As lien holder, entitled to the assets of Boston Steel & Precast Erectors, Inc. and as entitled to the accounts receivables pursuant to an agreement with Boston Steel & Precast Erectors, Inc., both agreements after the subject project had been completed, Blacksmith Investments, LLC is entitled to recovery as a breach of contract. As lien holder, standing the shoes of BSPE, Blacksmith may assert BSPE contentions that Cives refused payment of $213,973.79 is a material breach contract.

On a restitution level, Cives Steel Company has breached the contract by refused payment, an unjust and inequitable result. Blacksmith Investments, LLC, has been damaged by refused payment of,

$213,973.79, the accounts receivables due Boston Steel & Precast
Erectors, Inc. as lien holder.

## Conclusion

The non-assignment provision does not apply as no transfer of
funds exists.   Cives Steel Company cannot recover on a defense of
privity of contract where restitution, unjust enrichment, implied
contract, quasi contract, are equitable theories of recovery.

Blacksmith Investments, LLC, is a lien holder, a holder in due
course, having given value for the payment of the promissory note.
Blacksmith's rights as lien holder, are the same rights Citizens Bank
as a lien holder, to recover the debtor Cives Steel Company
receivables.

Clearly an inequitable result, a windfall in the amount of
$213,973.79 will be acquired by Cives Steel Company, if a lien holder
is precluded from recovery of Cives uncontested accounts receivables
otherwise due Boston Steel & Precast Erectors, Inc., their lien holder,
Blacksmith Investments, LLC.

By written agreement between Boston Steel & Precast Erectors,
Inc. and Blacksmith Investments, LLC, Blacksmith is entitled to the
accounts receivables of Boston Steel & Precast Erectors, Inc.  See
Exhibit "2", paragraph 6, Terms of Agreement of "BSPE Receivables",
that Blacksmith is entitled to recover the accounts receivables of
BSPE.

Cives Steel Company does not argue Boston Steel & Precast
Erectors, Inc. is otherwise to have been paid $213,973.79.

Plaintiff request this Court deny Defendant's motion and to
consider an award of Blacksmith's costs including reasonable attorney
fees required to respond to this motion to accomplish a Cives
$213,973.79 windfall, where there is no dispute that the money is owed.

Respectfully submitted,
Blacksmith Investments, LLC.
By their attorney,

Guy E. Guarino
BBO NO. 213960
72 Country Club Way
Ipswich, MA  01938
(978) 356-7500

Dated:   November 23, 2005

10

## CERTIFICATE OF SERVICE

I, Guy E. Guarino, attorney for Blacksmith Investments, LLC certify that I have this date caused to be mailed, first class mail, postage prepaid a copy of Plaintiffs Motion in Opposition and Memorandum of Law in Opposition to Defendant Cives Steel Company Motion to Dismiss to:

James P. Martin, Esq.
Gadsby Hannah, LLP
225 Franklin Street
Boston, MA  02110

Dated: November 23, 2005                    Guy E. Guarino

# EXHIBIT

# 1

## AGREEMENT:

In consideration of the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties hereto agree as follows:

1.      Saraceno requests, and the Lender agrees, that the Lender assign, transfer and sell the Note, the Loan Documents, the books and records of the Lender pertaining to the Purchased Rights and all rights to payment and other rights, title and interests of the Lender in, to and under the Loan Documents, including Lender's interest in and rights under the Litigation (all of the foregoing are referred to as the "Purchased Rights") to Assignee, upon payment to Lender of the sum of Three Hundred Ninety Three Thousand Nine Hundred Thirty Five and 85/100 Dollars ($393,935.85) by wire transfer, cashiers or certified check..

2.      Upon receipt of the funds set forth in paragraph 1 above (the "Closing"), the Lender shall:

> (a)     Assign, transfer, grant and convey unto Assignee the Purchased Rights without recourse and without representations and warranties except as expressly set forth in Sections 4 and 8 hereof.
>
> (b)     Deliver the original executed Note (to the extent the original is in its possession) endorsed, without recourse, to Assignee, in the form attached as Exhibit A hereto, and the originals of each Loan Document to the extent originals are in the Lender's possession. If Lender does not have the original Note in its possession, it shall execute a Lost Note Affidavit, certifying that the original Note has been lost or misplaced.
>
> (c)     Execute all necessary UCC-3 financing statements, assigning Lender's security interest in the collateral to Assignee. Assignee shall have filed and recorded such documents, and any other necessary assignment documents, at its sole cost and expense.
>
> (d)     Serve written notice by certified and regular mail on or before 7 days following the Closing Date upon each of the customers of the Borrower to whom the Lender has previously served notice of assignment of the Borrower's accounts receivable that any payments to be made upon the Borrower's accounts receivable shall be made to the Assignee and not the Lender from receipt of such notice forward.

2

3.    The Assignee and Saraceno hereby, jointly and severally, represent and warrant as follows:

(a)    They have made, independently and without reliance on the Lender, their own analysis of the Borrower and any guarantors of the Note and have independently reviewed the Loan Documents for the purpose of acquiring the Purchased Rights, and have reviewed all documents and information it deemed necessary to evaluate the merits and risks of purchasing and to make an informed and reasoned decision to purchase, the Purchased Rights;

(b)    They acknowledge that Lender has made no representations or warranties, express or implied, written or oral except as set forth in this Agreement, and have not relied upon the Lender to furnish any other representations or warranties, including any representations regarding the credit, affairs, financial condition or business of, or any other matter concerning the Borrower or any guarantors, or any other party liable under the Loan Documents;

(c)    They have neither engaged, retained nor had dealings with any broker in connection with this transaction; and

(d)    The Assignee shall be bound by the terms of the Loan Documents and to assume all obligations of the Lender thereunder and with respect to the Litigation. Assignee shall promptly, at its own cost and expense, file a notice of substitution of parties in connection with the Litigation.

4.    The Lender represents and warrants to Saraceno and the Assignee as follows: (a) this Agreement has been duly executed and delivered by the Lender; (b) the agreements and obligations of the Lender contained in this Agreement constitute legal, valid and binding obligations of the Lender, enforceable against the Lender in accordance with their respective terms; (c) the Lender has legal and beneficial title to all of the Purchased Rights, free and clear of all liens created by the Lender; (d) the unpaid principal and accrued and unpaid interest of the Note, as shown on the books of the Lender, is $387,717.37 as of November 6, 2003, subject to a per diem interest component of $43.01; and (e) the Lender has not executed or delivered to the Borrower or to MacInnis any agreements or other instruments releasing or purporting to release (i) the Borrower or MacInnis from any of the obligations under the Purchased Rights, or (ii) any of the collateral securing the Purchased Rights.

5.    Saraceno and the Assignee, on behalf of themselves and their heirs, successors and assigns, do hereby forever RELEASE and DISCHARGE the Lender, and its predecessors, successors, assigns, officers, managers, directors, shareholders, employees, agents, attorneys, representatives, parent corporations, subsidiaries, and affiliates (hereinafter all of the above collectively referred to herein as the "Released Parties"), jointly and severally from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action of any nature whatsoever, including, without limitation, all claims, demands, and causes of action for contribution and indemnity, whether arising at law or in equity (including without limitation, claims of fraud, duress, mistake, tortious interference, usury, negligence or fraud in rates and methods used to compute interest, and violation of the Massachusetts Consumer Protection Act),

3

whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, for or because of or as a result of any act, omission, communication, transaction, occurrence, representation, promise, damage, breach of contract, fraud, violation of any statute or law, commission of any tort, or any other matter whatsoever or thing done, omitted or suffered to be done by the Released Parties (insofar and only insofar as the same arise out of or relate to the Purchased Rights), which has occurred in whole or in part, or was initiated at any time from the beginning of time up to and immediately preceding the moment of the execution of this Agreement.

6. In exchange for the consideration provided hereunder by Saraceno and the Assignee, the Lender, on behalf of itself, its agents, officers, representative, predecessors and assigns, hereby releases Saraceno and the Assignee from any and all liability and obligations under the Saraceno Guaranty and the other Purchased Rights.

7. The Lender shall provide the Assignee and Saraceno at the Closing with an accounting of all sums that have been paid and which have become due and payable on or before the Closing pursuant to the Purchased Rights, together with originals (to the extent available) or complete copies of all of the Lender's books and records (including legal records) pertaining to the Loan Documents and the Litigation and any records that the Lender possesses with respect to the assets held by the Borrower, including any collateral interests under the Loan Documents.

8. The parties hereto acknowledge, represent, warrant and confirm the following:

(a) They have carefully read and understand the effect of this Agreement; they have had the assistance of separate counsel in carefully reviewing, discussing and considering all terms of this Agreement; and counsel for each of them has read and considered this Agreement and advised such party to execute the same;

(b) Neither the Lender's, Saraceno's or the Assignee's execution of this Agreement is based upon its reliance upon any representation, understanding or agreement not expressly set forth herein, and no party (or its agent) has made any representations to any other party (or its agent) not expressly set forth herein; and further, but not in limitation of the foregoing, the parties have made no representations one to another which relate to or affect the consideration, cause or any condition for which this Agreement is granted and which representations have not been expressly embodied herein;

(c) The sale of the Purchased Rights pursuant hereto does not involve the sale of a security under or as defined in any federal or state securities law or regulation, including without limitation, the Securities Act of 1933 and the Securities and Exchange Act of 1934, each as amended, and therefore neither Saraceno nor Assignee has the benefit of the protections or other provisions of any such law;

(d) Each of the parties does execute this Agreement as its free and voluntary act, without any duress, coercion or undue influence exerted by or on behalf of the

4

parties hereto or any other party;

(e)     This Agreement constitutes the entire agreement between the parties and is a final and complete release of those matters set forth herein; this Agreement embodies the entire agreement with respect to the respective rights, obligations and liabilities of the parties and supersedes all prior agreements and understandings, if any, relating to the subject matter hereof;

(f)     Each of the parties has full and complete authorization and power to execute this Agreement in the capacity herein stated; and this Agreement is a valid, binding and enforceable obligation of each of the parties and does not violate any law, rule, regulation, contract or agreement otherwise enforceable by any of the parties;

(g)     The representations and warranties of the parties contained herein shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby;

(h)     The Lender shall be released from all of its commitments, duties, responsibilities and other obligations under the and, from and after the Effective Time, the Lender shall, for all purposes, cease to be the obligee under the Loan Documents and plaintiff in the Litigation. Counsel for Assignee shall be responsible for filing a Substitution of Parties with respect to the Litigation;

(i)     Assignee shall notify each Borrower and Guarantor to, from and after the date of closing of the transactions contemplated herein, make all payments in respect of the Loan Documents and the Litigation directly to the Assignee, instead of to the Lender, and Lender agrees that if receives any payments from and after the closing to remit the same to Assignee; and

9.     If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.     This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

11.     This Agreement is binding upon the parties, their heirs, executors, administrators, assigns, successors in interest, predecessors in interest, and anyone claiming by, through or under any one of the parties.

12.     This Agreement may be executed in multiple identical counterparts, each of which when duly executed shall be deemed an original, and all of which shall be construed together as one agreement.

13.     The Assignee shall pay all transfer, filing and recording fees, taxes, costs and expenses, and any applicable documentary taxes required to be paid by either the Lender or Assignee in connection with the transactions contemplated by this Agreement, and hereby agrees to

5

indemnify and hold the Lender harmless from and against any and all claims, liability, cost and expense arising out of or in connection with the failure of Assignee to pay any such amount on a timely basis. Each of the Lender, Assignee and Saraceno shall be solely responsible for all costs or expenses (including legal expenses) incurred by it with respect to the sale of the Purchased Rights.

14.     The Assignee (and not the Lender) shall be solely liable for and shall pay when due all costs and expenses relating to or in connection with the Purchased Rights which are incurred after the date of this Agreement and agrees to indemnify and hold the Lender harmless from and against any and all claims, liability, cost and expense arising out of or in connection with the the Assignee's failure to pay any such amount on a timely basis. The Lender (and not the Assignee) shall be solely liable for and shall pay on or before the Closing all costs and expenses that the Lender has incurred in relation to or in connection with the Purchased Rights prior to the date of this Agreement and agrees to indemnify and hold the Assignee and Saraceno harmless from and against any and all claims, liability, cost and expense arising out of or in connection with the Lender's failure to pay any such amount on a timely basis.

15.     This Agreement shall be effective as to each of the parties once it has executed this Agreement.

16.     THIS WRITTEN UNDERTAKING CONTAINS THE FINAL AGREEMENT BETWEEN THE PARTIES ON THE SUBJECT MATTER HEREOF, AND IT SHALL NOT BE CONTRADICTED BY EVIDENCE OR PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

EXECUTED as a sealed instrument as of the date and year first written above.

BLACKSMITH INVESTMENTS, LLC
(the Assignee)

Witness

By: _____

Its duly authorized _MANAGER_

Witness

Robert Saraceno

6

CITIZENS BANK OF MASSACHUSETTS

Witness

By: _Christine A. Butler_
_Christine A. Butler_
Its duly authorized _Vice President_

# CERTIFICATE OF ORGANIZATION

## OF

## BLACKSMITH INVESTMENTS, LLC

THIS CERTIFICATE OF ORGANIZATION is made for the purpose of organizing a limited liability company (the "Company") under and pursuant to the provisions of the Massachusetts Limited Liability Company Act (Massachusetts General Laws, Chapter 156C). In connection therewith, as required by Massachusetts General Laws, Chapter 156C, Section 12(a), the undersigned hereby certifies to the Secretary of State of the Commonwealth of Massachusetts as follows:

1. <u>Federal Employer Identification Number</u>. The Federal Employer Identification Number for the Company is not yet available.

2. <u>Name of the Company</u>. The name of the Company is Blacksmith Investments, LLC.

3. <u>Office of the Company</u>. The address of the office of the Company in the Commonwealth at which its records shall be maintained, as required by Massachusetts General Laws, Chapter 156C, Section 5, is 11 Blacksmith Way, Saugus, Massachusetts 01906.

4. <u>Business of the Company</u>. The general character of the Company's business is: to invest in, hold, own, acquire, lease, mortgage and sell property of all types; and to engage in any other business permitted under the Massachusetts Limited Liability Company Act.

5. <u>Date of Dissolution</u>. The Company does not have a specific date of dissolution.

6. <u>Agent for Service of Process</u>. The name and address of the resident agent of the Company for service of process and for the maintenance of records as required pursuant to Massachusetts General Laws, Chapter 156C, Section 5, is Robert J. Saraceno, 11 Blacksmith Way, Saugus, Massachusetts 01906.

7. <u>Management</u>. The Manager of the Company is Robert J. Saraceno.

8. <u>Execution of Documents</u>. Robert J. Saraceno is authorized, acting singly in his capacity as Manager, to execute documents on behalf of the Company to be filed with the Office of the Secretary of State of the Commonwealth of Massachusetts.

9. <u>Execution of Recordable Real Estate Instruments</u>. Robert J. Saraceno is authorized, acting singly in his capacity as Manager, to execute, acknowledge, deliver, and record on behalf of the Company any recordable instrument purporting to affect an interest in real property, whether to be recorded with a registry of deeds or filed with a district office of the land court.



IN WITNESS WHEREOF, the undersigned hereby affirms under the penalties of perjury that the facts stated herein are true, this *30th* day of *August* . 2003.

Robert J. Saraceno. Manager   *MANAGER*

789432 1

-2-

# EXHIBIT

# 2

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is executed as of this 29 day of ~~August~~ *September km* 2004 by and among Robert Saraceno ("R. Saraceno"), Donna Saraceno ("D. Saraceno"), Blacksmith Investments, LLC ("Blacksmith"), Bernard W. MacInnis, Jr. ("B. MacInnis"), and Kathleen MacInnis ("K. MacInnis"), as follows.

## BACKGROUND

A.    On or about January 15, 2002, Boston Steel & Precast Erectors, Inc. ("BSPE"), a corporation fully owned by B. MacInnis, entered into a transaction whereby it purchased certain assets of Boston Steel Erectors, Inc. ("BSE"), a corporation fully owned by R. Saraceno. In connection with that transaction, BSPE executed the following documents (the "Transaction Documents"):

B.    Pursuant to Guaranties executed on the same date, B. MacInnis guaranteed BSPE's obligations under the Transaction Documents.

C.    On January 29, 2002, BSE, BSPE and others executed a Demand Revolving Discretionary Line of Credit Note in the original principal amount of One Million Two Hundred Thousand and 00/100 Dollars ($1,200,000.00) payable to the order of Citizens Bank (the "Citizens Note"). The Citizens Note was secured by a lien on all business assets of BSPE and BSE, as evidenced by a Loan and Security Agreement dated January 29, 2002 and certain UCC-1 Financing Statements filed with the Secretary of State of Massachusetts.

D.    R. Saraceno and B. MacInnis guaranteed the Citizens Note, by Guaranties dated January 29, 2002 in favor of Citizens.

E.    On or about _____, 2003, Citizens commenced a lawsuit against B. MacInnis entitled Citizens Bank of Massachusetts v. Bernard MacInnis, Jr., Civil Action No. 03-4175-F (the "Note Litigation"). In the Note Litigation, Citizens obtained a prejudgment real estate attachment (the "Attachment") against B. MacInnis' interest in the MacInnis' home located at 41 Birch Pond Drive, Saugus, Massachusetts (the "Property"). Thereafter, B. MacInnis filed a Third Party Complaint, asserting contribution claims against R. Saraceno. R. Saraceno then filed a Counterclaim against B. MacInnis, seeking payment under B. MacInnis' guarantee of payments under the Transactions Documents.

F.    On or about _____, 200_, Saraceno, Blacksmith and Citizens entered into a Settlement and Assignment Agreement, pursuant to which Citizens assigned its rights under the Citizens Note, including the Note Litigation, to Blacksmith – an entity created and owned by R. Saraceno – in exchange for full repayment of the Note.

G.    On or about February 23, 2004, Blacksmith commenced a lawsuit against, among others, BSPE, seeking payment under the Citizens Note, and asserting fraudulent transfer claims against K. MacInnis, entitled Blacksmith Investments, LLC v. Boston Steel & Precast Erectors Holdings Trust, et al., Civil Action No. 04-0775-F (the "BSPE Litigation").



H.      The MacInnises have provided R. Saraceno with executed Financial Statements, copies of which are attached hereto as Exhibit A, indicating that the only asset owned by them that has any net, non-exempt equity is the Property. Blacksmith and Saraceno have relied upon those Financial Statements in entering into this Settlement Agreement.

I.      The parties now seek to resolve all obligations among them, including those created by or raised in the Citizens Note, the Transaction Documents, the Note Litigation and the BSPE Litigation (the "Obligations"), and have reached an agreement, the terms of which are set forth below:

## TERMS OF AGREEMENT

Based on the foregoing, the parties hereby agree as follows:

1.      **Settlement Payment**. B. MacInnis and K. MacInnis hereby agree to pay to Blacksmith the sum of One Hundred Thousand Dollars ($100,000), in full and final satisfaction of the Obligations (the "Settlement Payment"). The Settlement Payment shall be payable on the earlier of: (a) the closing of the sale of the Property, described below in Paragraph 4; or (b) February 28, 2005.

2.      **Promissory Note**.     The obligation to make the Settlement Payment shall be evidenced by a Promissory Note (the "Settlement Note"), in the form attached hereto as Exhibit B, from B. MacInnis and K. MacInnis, in the amount of $100,000, provided however that, to the extent the Settlement Payment is not satisfied from the proceeds of the sale of the Property, the Settlement Note shall be a recourse obligation against B. MacInnis in the amount of Seventy-Five Thousand Dollars ($75,000.00) only, and a recourse obligation against K. MacInnis in the amount of Twenty-Five Thousand Dollars ($25,000.00) only.

3.      **Mortgage**.     To secure the obligation of B. MacInnis and K. MacInnis to make the Settlement Payment, B. MacInnis and K. MacInnis shall grant to Blacksmith a mortgage (the "Mortgage") on the Property, in the form attached hereto as Exhibit C, in the amount of One Hundred Thousand Dollars ($100,000.00).

4.      **Sale of Property**.     B. MacInnis and K. MacInnis agree to use best efforts to sell the Property by listing the Property with a reputable real estate broker, and accepting any offer that is equal to or exceeds the fair market value as determined by that broker.

5.      **Tax Returns**. B. MacInnis and K. MacInnis shall provide to Saraceno copies of their FY 2003 federal and state tax returns, upon their completion. Saraceno shall keep the tax returns confidential, and share them only with his counsel.

6.      **BSPE Receivables**.     It is understood by all parties that this Settlement Agreement does not resolve in full the obligations of BSPE to Blacksmith under the Citizens Note, and that Blacksmith shall retain all rights to collect for its own benefit the outstanding accounts receivable of BSPE. B. MacInnis hereby agrees to cooperate fully with Blacksmith in



its efforts to collect the outstanding accounts receivable of BSPE.

      7.    **Dismissal, Release, Discharge**.    Upon timely payment in full of the Settlement Payment:

    (a)    Blacksmith, R. Saraceno and D. Saraceno on the one hand, and B. MacInnis and K. MacInnis on the other shall mutually release each other, by executing General Releases in the form attached hereto as Exhibit C-1 and C-2;

    (b)    Blacksmith and Saraceno shall dismiss with prejudice any and all actions, as against B. MacInnis and K. MacInnis only, including but not limited to: the Complaint in the Note Litigation, the Complaint in the BSPE Litigation, and the Third Party Counterclaim in the Note Litigation;

    (c)    B. MacInnis and K. MacInnis shall dismiss with prejudice any and all actions against R. Saraceno and Blacksmith, including but not limited to: the Third Party Complaint in the Note Litigation and the Counterclaim asserted by K. MacInnis in the BSPE Litigation;

    (d)    Blacksmith shall cause the Attachment to be released; and

    (e)    Blacksmith shall discharge the Mortgage.

      8.    **Remaining Defendants**.    It is expressly understood by the parties to this Settlement Agreement that nothing contained herein shall in any way affect the Note Litigation or the BSPE Litigation with respect to any defendants named therein that are not parties hereto, including BSPE, Boston Steel & Precast Erectors Holdings Trust, MacSteel Erectors, Inc., and/or Peter Woodford.

      9.    **Miscellaneous.**

    (a)    If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

    (b)    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

    (c)    This Agreement is binding upon the parties, their heirs, executors, administrators, assigns, successors in interest, predecessors in interest, and anyone claiming by, through or under any one of the parties.

    (d)    This Agreement may be executed in multiple identical counterparts, each of which when duly executed shall be deemed an original, and all of which



(e)

shall be construed together as one agreement.
THIS WRITTEN UNDERTAKING CONTAINS THE FINAL
AGREEMENT BETWEEN THE PARTIES ON THE SUBJECT
MATTER HEREOF, AND IT SHALL NOT BE CONTRADICTED BY
EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT
ORAL AGREEMENTS OF THE PARTIES.

EXECUTED as a sealed instrument as of the date and year first written above.

BLACKSMITH INVESTMENTS, LLC
(the Assignee)

Witness

Witness

Witness

Witness

Witness

By: _____
Robert J. Saraceno
Its duly authorized Manager

_____
Robert Saraceno

_____
Donna Saraceno

_____
Bernard MacInnis VP

_____
Kathleen MacInnis