UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLACKSMITH INVESTMENTS, LLC,<br><br>    Plaintiff/Defendant-In-Counterclaim,<br><br>v.<br><br>CIVES STEEL COMPANY,<br><br>    Defendant/Plaintiff-In-Counterclaim. | CIVIL ACTION NO. 05-11567-NG |

## MEMORANDUM OF LAW
### in support of
### CIVES' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Defendant/plaintiff-in-counterclaim Cives Corporation (sued herein as "Cives Steel Company") ("Cives") submits this Memorandum of Law in support of its Motion For Summary Judgment on the last remaining claim of the plaintiff/defendant-in-counterclaim Blacksmith Investments, LLC ("Blacksmith"). Blacksmith's claim for breach of contract must fail because there are no material facts in dispute that (1) Blacksmith did not and does not have a contract with Cives, (2) Blacksmith is not a third-party beneficiary of any contract with Cives, and (3) Blacksmith has no rights in, nor did it receive an assignment of any rights to, a contract with Cives.

This is now the third time that the viability of Blacksmith's claims against Cives have been before this Court.[1] Most recently, this Court dismissed all of Blacksmith's claims (save for

---

[1] This is Blacksmith's second lawsuit against Cives to collect moneys under a contract to which it was not a party. Blacksmith's first action was dismissed on March 16, 2005 without prejudice in *Blacksmith Investments, LLC v. Cives Steel Co., Inc.*, 228 F.R.D. 66, 74 (D.Mass. 2005)(Gertner, J.). Blacksmith re-constituted its claims and initiated this action on July 6, 2005. By Order dated September 7, 2005, this Court dismissed Blacksmith's claims

its current breach of contract claim). With respect to Blacksmith's instant contract claim, the Court gave Blacksmith one last chance to demonstrate that its claims were not barred by the express anti-assignment clause contained in the contract between Cives and its former subcontractor, Boston Steel Erectors ("BSE"). The Court's reprieve also afforded Blacksmith and Cives the opportunity to conduct discovery on this issue.

It was during discovery that Cives learned of an independent reason to dismiss Blacksmith's contract claim, thus eliminating the need to consider the enforceability of the Contract's anti-assignment clause. The documents recently produced by Blacksmith now make clear why Blacksmith chose not to disclose them to the Court in response to earlier motions. During discovery, Cives learned that the very document that Blacksmith relies upon as the cornerstone of its claim (the Citizens Bank of Massachusetts Loan and Security Agreement) *predates* the Cives/BSE Contract to which Blacksmith claims an entitlement. Thus, at the time that Blacksmith alleges it acquired rights to the Cives/BSE contract, the Cives/BSE contract wasn't even in existence!

Equally important is the fact that the Citizens Bank Loan and Security Agreement ("Security Agreement") *did not grant any interests in future contracts* like the Cives/BSE Contract because the Security Agreement did not contain an "after-acquired property" clause as required by Massachusetts law. This discovery makes clear that Citizens Bank never obtained a security interest in the *future* Cives/BSE contract and thus never had any rights to assign to Blacksmith in the first place.

---

for *quantum meruit* and unjust enrichment in its amended complaint. Report And Recommendation On Defendant's Motion To Dismiss (Dein, U.S.M.J.)("Report on Motion to Dismiss") at 14.

2

BO1 15843362.1

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**1.    Blacksmith has no rights in the Cives/BSE Contract.**

On July 17, 2002, Cives hired BSE to erect the structural steel on the Manulife Financial Center Building in Boston, Massachusetts ("Cives/BSE Contract").[2]   Blacksmith was not a signatory to, nor was it a third party beneficiary of, the Cives/BSE Contract. *Id.*

**2.    The Cives/BSE Contract was not granted to Citizens as security for BSE's Note.**

Six months *before* the July 17, 2002 Cives/BSE Contract, BSE and its affiliated companies obtained a $1,200,000 line of credit from Citizens Bank (the "Note").[3]   As security for the Note, BSE and its affiliates also executed the Security Agreement which provided Citizens with collateral in the assets of BSE and its affiliates in existence *at the time the Loan Agreement was signed.*[4] *Id.* at §3.1   Notably, the Security Agreement is silent with respect to any assets that were acquired by BSE *after* January 29, 2002, the date the Security Agreement and the Note were executed. Section 3.1 of the Loan Agreement provides in pertinent part:

> To secure [BSE's] timely payment and performance of all of the Obligations, [BSE] hereby mortgages, pledges, transfers, conveys and delivers to [Citizens Bank], and grants to [Citizens Bank] an irrevocable, unconditional and continuing first and prior security interest and lien upon all assets of [BSE], whether or not within the scope of Article Nine, including without limitation the following (the "Collateral"): (A) Accounts Receivable (B) Chattel Paper (C) Contracts (D) Deposits (E) Documents (F) Equipment (G) Fixtures (H) General Intangibles (I) Instruments (J) Inventory (K) Investment Property (L) Letter-Of-Credit Rights (M) Supporting Obligations (N) Health Care Insurance (O) Money ....

*Id.*

---

[2] A copy of the Cives/BSE Contract is attached to the accompanying Affidavit of Stephen C. Bazarian in Support of Cives' Motion for Summary Judgment ("Bazarian Affidavit") at **Exhibit A**.

[3] A copy of the January 29, 2002 Note is attached to the Bazarian Affidavit at **Exhibit B**.

[4] A copy of the January 29, 2002 Security Agreement is attached to the Bazarian Affidavit at **Exhibit C**.

Equally important is the fact that none of the definitions of *any* of the terms used above to describe the collateral include an "after-acquired property" clause. *Id.*[5] For example, the definition of "Accounts Receivable" speaks to *current* assets and is defined as follows:

> "Accounts Receivable" means (a) all Accounts, (b) all notes, drafts and acceptances of Borrower, (c) all rights of Borrower to receive the payment of money under Contracts, franchises, licenses, permits and other agreements, Documents or Instruments (whether or not earned by performance) or otherwise, and (d) all rights of Borrower to receive payments from any other source, together, in each case, with all rights and interests of Borrower in the goods and services, if any, which have given rise thereto, including, without limitation, returned or repossessed goods and unpaid sellers' rights of rescission, replevin and reclamation and rights to stoppage in transit.

*Id.* at §1.1.

Even the definition of the term "Contracts" is silent on the issue of using "after-acquired property" as collateral. Section 1.1 of the Loan Agreement states:

> "Contracts" means any and all rights, title and interests of Borrower in, to and under contracts, undertakings, franchise agreements, warranties and representations, records and books of account and other agreements (other than rights evidenced by Chattel Paper, Documents or Instruments, as those terms are defined above and below), including, without limitation, with respect to an Account and any agreement relating to the terms of payment or the terms of performance.

*Id.*

Notably, the concept of "after acquired property" was purposely incorporated into *other* aspects of the Security Agreement, but not for purposes of collateral.[6] Accordingly, it is clear

---

[5] The sole exception to this is the definition of "General Intangibles." Security Agreement at §1.1. The Agreement defines this collateral as including "Intellectual Property," which, in pertinent part, is defined as "intellectual and similar property of [BSE] of every kind and nature, now or hereafter owned by [BSE] or as to which [BSE] now or hereafter acquires rights pursuant to a License or otherwise...." *Id.*

[6] For example (a) "Intellectual Property" is defined, in pertinent part, as, "[A]ll intellectual...property of Borrower of every kind and nature, now or hereafter owned by Borrower....", Security Agreement at §1.1; (b) "Obligations" is defined, in pertinent part, as, "[L]oans...by Borrower to Lender of every kind and description...now existing or hereafter arising.....," *id.*; (c) "Patents" includes "[A]ll of the following now or hereafter owned by Borrower or as to which Borrower now or hereafter acquires rights pursuant to a License....," *id.*; and (d) "'Trademarks' means all of the following now or hereafter owned by Borrower...." *Id.*

4

that the parties to the Security Agreement did not intend to include "after acquired property" (such as the subsequently obtained Cives/BSE Contract) as collateral to secure the Note.

Other key documents surrounding this critical transaction make clear that the parties did not intend to use *future* assets or "after acquired property" to secure the Note. The Note itself provides that, "This Note is secured by any collateral any time granted to Bank to secure any obligations of any maker hereof." *Id.* at 2.

In order for Blacksmith to assert its contract claim against Cives, Citizens must have possessed an interest in the Cives/BSE Contract and then assigned that interest to Blacksmith. Inasmuch as Citizens never obtained an interest in the Cives/BSE Contract, it had nothing to assign and thus Blacksmith's contract claim must fail.

## ARGUMENT

A. <u>**Standard Of Review**</u>

Rule 56 of Massachusetts Rules of Civil Procedure provides for the entry of summary judgment where the moving party shows "that there is no genuine issue as to any material fact" and that, upon the facts established, it is entitled to "judgment as a matter of law." *Id. See also Community National Bank v. Dawes*, 369 Mass. 550, 553 (1976). As the Supreme Judicial Court has recognized, "[W]ell pleaded cases and motions for summary judgment supported by affidavits and other materials serve a 'salutary purpose.'" *Community National Bank*, 369 Mass. at 555. Actions, such as the instant one, to enforce the obligations of parties under written agreements are especially suited to summary disposition. *See, e.g., U.S. Trust Co. of New York v. Herriott*, 10 Mass. App. Ct. 313, 320 (1980) (enforcing a promissory note); *Community National Bank*, 369 Mass. at 553-556.

5

In responding to a motion for summary judgment, the adverse party must "set forth specific facts showing that there is a genuine issue for trial." *Cullen Enterprises, Inc. v. Massachusetts Property Ins. Underwriting Assoc.*, 399 Mass. 886, 890 (1987). "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." *Id.* (quoting *Madsen v. Erwin*, 395 Mass. 715, 721 (1985)). Here, the undisputed facts establish that Cives is entitled to judgment as a matter of law on Count I of Blacksmith's Complaint.

**B.   Blacksmith Has No Rights In The Cives/BSE Contract**

It is well-established that "'There must be a privity of contract between the plaintiff and defendant, in order to render the defendant liable to an action, by the plaintiff, on the contract.'" *Choate Hall & Stewart v. SCA Services, Inc.*, 378 Mass. 535, 543 (1979)(quoting *Mellen v. Whipple*, 1 Gray 317, 321 (1854)). *See also Anastasi Brothers Corporation v. The Massachusetts Convention Center Authority*, 1993 WL 818553, *2 (Mass.Super. 1993)("In the absence of privity of contract, [the plaintiff] cannot prevail on its breach of contract claims...."). The burden is on the plaintiff in a breach of contract action to establish the existence of a binding agreement with the defendant. *See Orell v. UMass Memorial Medical Center, Inc.*, 203 F.Supp.2d 52, 67 (D.Mass. 2002)("In order to state a claim for breach of contract, plaintiff must allege facts sufficient to show that an express or implied binding agreement existed between her and the defendants."). Summary judgment in favor of a defendant is the appropriate relief on a breach of contract claim in the absence of privity between the plaintiff and defendant. *Anastasi Brothers Corporation*, 1993 WL 818553 at *2 (summary judgment entered in favor of defendant in absence of privity with plaintiff).

In the case at bar, the undisputed material facts establish that Blacksmith has no rights under the Cives/BSE Contract. Cives retained BSE to erect steel for the construction of the

6

Manulife Building in Boston. Cives/BSE Contract at 1. The sole parties to the Cives/BSE Contract are Cives and BSE. *Id.* Blacksmith is neither a party to, nor a third-party beneficiary of, the Cives/BSE Contract. *Id.* As such, Blacksmith has no right to enforce the Cives/BSE Contract and summary judgment should enter in favor of Cives. *Anastasi Brothers Corporation*, 1993 WL 818553 at *2.

### C. Citizens Never Acquired An Interest In The Cives/BSE Contract Because It Was "After-Acquired Property"

M.G.L. c. 106, §9-203, clearly provides, in pertinent part, that a security interest attaches to collateral and is enforceable only when the "debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party." *Id.* at 9-203((b)(2). In the case at bar, no security interested attached to BSE's rights in the Cives/BSE Contract because, at the time BSE granted its security interest to Citizens (January 29, 2002), BSE had no rights in the Cives/BSE Contract as the Contract did not exist and the Security Agreement does not describe that Contract. *Id.* Thus, the conditions for the attachment of a security interest specified in Section 9-203 were not met. *Id.*

A security agreement may create or provide for a security interest in after-acquired collateral. M.G.L. c. 106, §9-204(a). A security agreement without an after-acquired property provision provides no interest in collateral acquired by the debtor after the execution of the agreement. 25A Massachusetts Practice, Manual on Uniform Commercial Code §9:58 (3rd ed.). At least one commentator has noted that:

> The availability of after-acquired property as collateral is optional to the parties in that [§9-204(a)] states, and has historically stated, that the security agreement may provide for same. *That is, if the agreement is silent on this matter, no security interest should attach to such later property.* The security interest will not attach, and therefore become enforceable under §9-203, until the debtor acquires rights in such collateral. *The requirement is only that the security agreement…contain such after-acquired property clause.*

*Id.* (emphasis added).

A careful inspection of the Security Agreement in the case at bar reveals that it's drafters demonstrated an ability to include after-acquired property language when they chose to do so. The definitions of "Intellectual Property," "Obligations," "Patents," and "Trademarks" explicitly include rights or obligations later acquired. *Id.* at §1.1. Having demonstrated the ability, and even the propensity, to clearly provide for after-acquired rights or obligations, the Security Agreement's omission of an after-acquired property clause in its description of the collateral granted by BSE, and the omission of such language in the definitions of "Accounts Receivable" and "Contracts," clearly evidence an intent by the drafters to deliberately exclude such property from the collateral secured by the Agreement.

The undisputed material facts establish that, except for certain specific items which would not include the Cives/BSE Contract, the Security Agreement provided Citizens Bank with a security interest in only such of BSE's assets which were in existence as of the date of the Agreement. The Security Agreement is devoid of an after-acquired property clause. *Id.* at §3.1. Further, the definitions of "Accounts Receivable" and "Contracts," the only defined terms in the Security Agreement's list of collateral that could conceivably include the Cives/BSE Contract, *id.* at §3.1, do not include accounts receivable acquired, or contracts entered into, by BSE after the date of the Security Agreement. *Id.* at §1.1.

Finally, the Security Agreement provides that BSE must explicitly grant Citizens Bank a security interest in any collateral not described in the Agreement. *Id.* at §1.1 (defining "Collateral" as any of BSE's assets to which Citizens Bank "is now or hereafter granted" a security interest); §3.1(P)(providing Citizens Bank with a security interest in the assets of BSE and "All other collateral in which [BSE] may hereafter grant to [Citizens Bank] a security

8

interest...."). Inasmuch as Citizens never obtained an interest in the Cives/BSE Contract, it had nothing to assign (eliminating any need to consider G.L. c. 106, §9-405(d)) and thus Blacksmith's contract claim must fail.

## CONCLUSION

Blacksmith's claim for breach of contract must fail because the undisputed material facts establish that Blacksmith has no right to enforce the Cives/BSE Contract. Blacksmith is not a party to, or a third-party beneficiary of, the Cives/BSE Contract. Further, Blacksmith has no rights in, nor did it receive an assignment of any rights in, the Cives/BSE Contract from Citizens. BSE did not enter into the Cives/BSE Contract until six months after it entered into the Security Agreement and that Agreement does not contain an "after-acquired property" clause. As such, summary judgment must enter in favor of Cives on Blacksmith's sole remaining claim of breach of contract.

CIVES CORPORATION

By its attorneys,

/s/ Joseph A. Barra
Joseph A. Barra (BBO # 632534)
jbarra@seyfarth.com
Stephen C. Bazarian (BBO # 553148)
sbazarian@seyfarth.com
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:   (617) 946-4801

May 7, 2007

BO1 15843362.1

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system on May 7, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ Stephen C. Bazarian
Stephen C. Bazarian