UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLACKSMITH INVESTMENTS, LLC, ) <br> ) <br> Plaintiff/Defendant-In-Counterclaim, ) <br> ) <br> v. ) <br> ) <br> CIVES STEEL COMPANY, ) <br> ) <br> Defendant/Plaintiff-In-Counterclaim. ) <br> ) | CIVIL ACTION NO. 05-11567-NG |

LOCAL RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS
in support of
CIVES' MOTION FOR SUMMARY JUDGMENT

Defendant/plaintiff-in-counterclaim Cives Corporation (sued herein as "Cives Steel Company") ("Cives") submits this concise statement of material facts pursuant to Local Rule 56.1 and Fed.R.Civ.P. 56 in support of its Motion for Summary Judgment against plaintiff/defendant-in-counterclaim Blacksmith Investments, LLC ("Blacksmith").

MATERIAL FACTS

1. **Blacksmith has no rights in the Cives/BSE Contract.**

    1. On July 17, 2002, Cives hired Boston Steel Erectors ("BSE") to erect the structural steel on the Manulife Financial Center Building in Boston, Massachusetts ("Cives/BSE Contract"). A copy of the Cives/BSE Contract is attached to the accompanying Affidavit of Stephen C. Bazarian in Support of Cives' Motion for Summary Judgment ("Bazarian Affidavit") at **Exhibit A**. Blacksmith was not a signatory to, nor was it a third party beneficiary of, the Cives/BSE Contract. *Id.*

**2.      The Cives/BSE Contract was not granted to Citizens as security for BSE's Note.**

2.      Six months *before* the July 17, 2002 Cives/BSE Contract, BSE and its affiliated companies obtained a $1,200,000 line of credit from Citizens Bank of Massachusetts (the "Note"). A copy of the January 29, 2002 Note is attached to the Bazarian Affidavit at **Exhibit B**.

3.      On that same date, BSE and its affiliates executed a Loan and Security Agreement ("Security Agreement") in favor of Citizens as security for the Note. A copy of the January 29, 2002 Security Agreement is attached to the Bazarian Affidavit at **Exhibit C**.

4.      The Security Agreement provided Citizens with collateral in the assets of BSE and its affiliates in existence *at the time the Loan Agreement was signed. Id.* at §3.1.

5.      The Security Agreement is silent with respect to any assets that were acquired by BSE *after* January 29, 2002, the date the Security Agreement and the Note were executed. Section 3.1 of the Loan Agreement provides in pertinent part:

> To secure [BSE's] timely payment and performance of all of the Obligations, [BSE] hereby mortgages, pledges, transfers, conveys and delivers to [Citizens Bank], and grants to [Citizens Bank] an irrevocable, unconditional and continuing first and prior security interest and lien upon all assets of [BSE], whether or not within the scope of Article Nine, including without limitation the following (the "Collateral"): (A) Accounts Receivable (B) Chattel Paper (C) Contracts (D) Deposits (E) Documents (F) Equipment (G) Fixtures (H) General Intangibles (I) Instruments (J) Inventory (K) Investment Property (L) Letter-Of-Credit Rights (M) Supporting Obligations (N) Health Care Insurance (O) Money ….

*Id.*

6.      None of the definitions of *any* of the terms used in §3.1 above to describe the collateral include an "after-acquired property" clause. *Id.* For example, the definition of "Accounts Receivable" speaks to *current* assets and is defined as follows:

> "Accounts Receivable" means (a) all Accounts, (b) all notes, drafts and acceptances of Borrower, (c) all rights of Borrower to receive the payment of money under Contracts, franchises, licenses, permits and other agreements, Documents or Instruments (whether or not earned by performance) or otherwise, and (d) all rights of Borrower to receive payments from any other source, together, in each case, with all rights and interests of

> Borrower in the goods and services, if any, which have given rise thereto, including, without limitation, returned or repossessed goods and unpaid sellers' rights of rescission, replevin and reclamation and rights to stoppage in transit.

Security Agreement at §1.1. Even the definition of the term "Contracts" is silent on the issue of using "after-acquired property" as collateral. Section 1.1 of the Loan Agreement states:

> "Contracts" means any and all rights, title and interests of Borrower in, to and under contracts, undertakings, franchise agreements, warranties and representations, records and books of account and other agreements (other than rights evidenced by Chattel Paper, Documents or Instruments, as those terms are defined above and below), including, without limitation, with respect to an Account and any agreement relating to the terms of payment or the terms of performance.

*Id.*

7. The sole exception to the fact that none of the definitions of *any* of the terms used in §3.1 above to describe the collateral include an "after-acquired property" clause is the definition of "General Intangibles." *Id.* at §1.1. The Agreement defines this collateral as including "Intellectual Property," which, in pertinent part, is defined as "intellectual and similar property of [BSE] of every kind and nature, now or hereafter owned by [BSE] or as to which [BSE] now or hereafter acquires rights pursuant to a License or otherwise...." *Id.*

8. The Security Agreement provides that BSE must explicitly grant Citizens Bank a security interest in any collateral not described in the Agreement. *Id.* at §1.1 (defining "Collateral" as any of BSE's assets to which Citizens Bank "is now or hereafter granted" a security interest); §3.1(P)(providing Citizens Bank with a security interest in the assets of BSE and "All other collateral in which [BSE] may hereafter grant to [Citizens Bank] a security interest....").

9. The concept of "after acquired property" was purposely incorporated into *other* aspects of the Security Agreement, but not for purposes of collateral. For example (a) "Intellectual Property" is defined, in pertinent part, as, "[A]ll intellectual...property of Borrower

3

of every kind and nature, now or hereafter owned by Borrower....", Security Agreement at §1.1; (b) "Obligations" is defined, in pertinent part, as, "[L]oans...by Borrower to Lender of every kind and description...now existing or hereafter arising.....," *id.*; (c) "Patents" includes "[A]ll of the following now or hereafter owned by Borrower or as to which Borrower now or hereafter acquires rights pursuant to a License....," *id.*; and (d) "'Trademarks' means all of the following now or hereafter owned by Borrower...." *Id.*

10. The Note provides that, "This Note is secured by any collateral any time granted to Bank to secure any obligations of any maker hereof." *Id.* at 2.

        CIVES CORPORATION

        By its attorneys,

        /s/ Joseph A. Barra
        Joseph A. Barra (BBO # 632534)
        jbarra@seyfarth.com
        Stephen C. Bazarian (BBO # 553148)
        sbazarian@seyfarth.com
        SEYFARTH SHAW LLP
        World Trade Center East
        Two Seaport Lane
        Suite 300
        Boston, MA 02210-2028
        Telephone:   (617) 946-4800
        Telecopier:   (617) 946-4801

Dated: May 7, 2007

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system on May 7, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Stephen C. Bazarian
Stephen C. Bazarian