**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BLACKSMITH INVESTMENTS, LLC, ) <br> ) <br> Plaintiff/Defendant-In-Counterclaim, ) <br> ) <br> v. ) <br> ) <br> CIVES STEEL COMPANY, ) <br> ) <br> Defendant/Plaintiff-In-Counterclaim. ) <br> ) | CIVIL ACTION NO. 05-11567-NG |

**REPLY MEMORANDUM OF LAW**
**in further support of**
**CIVES' MOTION FOR SUMMARY JUDGMENT**

Defendant/plaintiff-in-counterclaim Cives Corporation (sued herein as "Cives Steel Company") ("Cives") submits this Reply Memorandum of Law in further support of Cives' Motion for Summary Judgment ("Motion") and in support of Cives' request that this Court strike certain evidence submitted by Blacksmith in its May 16, 2007 Opposition to Cives' Motion.[1]

**PRELIMINARY STATEMENT**

This Reply Memorandum is necessary to address Blacksmith's (1) ill-fated efforts to re-write the Security Agreement so as to now include the Cives/BSE Contract as "after acquired" collateral and (2) misunderstanding of the law as to how "after acquired" property becomes a secured interest. Additionally, Blacksmith's attempt to introduce a November 7, 2003 letter from Citizens Bank to Cives (the "Citizens/Cives Letter") and a September 29, 2004 Settlement Agreement ("Settlement Agreement") into evidence should not be permitted inasmuch as they

---

[1] During a Court conference on June 7, 2007, J. Gertner granted Cives' oral request to file a Reply Memorandum. The Court also advised Cives that any request to strike documents contained in Blacksmith's Opposition should be contained within its Reply Memorandum and not as a separate Motion to Strike.

were prepared years *after* the Security Agreement was executed, are parole, constitute inadmissible hearsay and are not properly authenticated.

## I. CIVES' MOTION SHOULD BE GRANTED.

### A. Blacksmith may not now re-write the Security Agreement to include the Cives/BSE Contract as "after acquired" collateral.

The Security Agreement does not say what Blacksmith claims it says. Blacksmith's notion that the Security Agreement contains language that provides it with a security interest in the Cives/BSE Contract is simply incorrect.

In order to create a security interest in Massachusetts, the debtor must authenticate an agreement that contains a provision *describing the property* that will serve as collateral. *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973); *Woodcock Ins. Agency, Inc. v. Alles*, 1984 Mass. Super. Lexis 1, 7 (1984) (emphasis added). This requirement serves two main purposes, first "to prevent disputes as to precisely which items of property are covered by a secured interest," and second, "to serve as a Statute of Frauds, preventing the enforcement of claims based on wholly oral representations." *Numeric,* at 1331.

The words and phrases that Blacksmith uses to try to squeeze the Cives/BSE Contract into the Security Agreement as collateral fail both of the *Numeric* objectives. For example, Blacksmith argues that the Security Agreement's use of the term "Obligations" includes a security interest in the Cives/BSE Contract as "after acquired" collateral. However, the concept of "Obligations" has nothing to do with collateral. Rather, the definition of "Obligations" in the Security Agreement refers to the loans, advances, debts and duties that *BSE owes to Citizens Bank,* not to the assets that BSE is using to secure the loan.[2] Indeed, the concept of

---

[2] See Section 1.1. of the Security Agreement attached to the Affidavit of Stephen C. Bazarian as **Exhibit C.**

2

"Obligations" is not even included in the list of assets that BSE pledges to Citizens as a security interest.[3]

Likewise, Blacksmith attempts, unsuccessfully, to twist the Security Agreement's reference to the term "Proceeds" into an "after acquired" collateral interest. Contrary to Blacksmith's theory, the Security Agreement does not use the term "Proceeds" to *describe* collateral. Rather, the term "Proceeds" refers to the funds or monies that BSE would acquire if the collateral were *sold, leased or disposed of.*[4]

Blacksmith makes much of the fact that the Security Agreement provides Citizens with a "continuing" security interest in BSE's assets. However, a plain reading of the Security Agreement makes clear that the term "continuing" refers to the continuous *duration* of the security interests that are already created and not to **additional assets** that BSE may acquire *after* the parties executed the Security Agreement. *See* Section 3.1 of the Security Agreement (Citizen's interest in BSE's assets is "irrevocable, unconditional and continuing.")

**B.    Blacksmith's "revolving loan" fails to create
          a security interest in "after acquired property".**

A security agreement *may* create a security interest in "after acquired" property. Mass. Gen. Laws c. 106, §9-204. However, in order to be enforceable, the security agreement *must* describe the property that will serve as collateral. Mass. Gen. Laws c. 106, §9-203 (emphasis added).[5] Additionally, Mass. Gen. Laws c. 106, §9-108 requires that the description of the collateral "reasonably identify" the property that is being pledged. *Id*.

---

[3] See Bazarian Affidavit **Exhibit C**: Security Agreement Section 3.1.
[4] See Bazarian Affidavit **Exhibit C**: Security Agreement Section 1.1.
[5] Under Section 9-203, an enforceable security interest may also be obtained when the secured party is in possession of the collateral, or when a security certificate has been delivered to the secured party or the secured party has taken control of deposit accounts, electronic chattel paper, investment property or letter of credit rights. However, none of these situations are relevant to the instant circumstances. *Id*.

While Massachusetts Courts have not spoken on what *particular* language is needed to create a security interest in "after acquired" property, other jurisdictions have made clear that no security interest exists in "after acquired" property without language *expressly describing the property* and specifically stating that the collateral would be acquired *after* the parties executed the security agreement. *In re Taylored Prod., Inc.*, 5 U.C.C. Rep. Serv. 286, 289-91 (Bankr. W.D.Mich.1968) (failure to include after-acquired clause in security agreement results in no security interest in after-acquired property); *Idaho Bank & Trust Co. v. Cargill, Inc.*, 105 Idaho 83, 89 (1983) (the language "all monies now due or to become due under certain Grain Contracts held in your warehouse" was insufficient to create a security interest in after-acquired collateral.); *Wollenberg v. Phoenix Leasing Inc.*, 182 Ariz. 4, 8-9 (1994) (no security interest in after-acquired property even when the security agreement specifically identified "customer accounts".).

In *In re Middle Atlantic Stud Welding Co.*, 503 F.2d 1133, (3rd Cir. 1974), the Third Circuit emphasized the need for "after acquired" security interests to be created by clear and unambiguous language.  There, the Court found that "A requirement that intended inclusion of after-acquired accounts receivable be <u>unambiguously expressed</u> will not significantly conflict with any important Code policies, and will support some.  It will produce simpler, clearer and more certain law for all parties." *In re Middle Atlantic* at *1136* (emphasis added).

The Court reasoned that it is "…neither onerous nor unreasonable to require a security agreement to make clear its intended collateral…[especially] given the law's relatively recent hostility to after-acquired property clauses.  The Court added that "…in the absence of such a statement, [one] might reasonably conclude that in the bargaining process the parties agreed <u>not to encumber</u> after acquired-accounts." *In re Middle Atlantic* at 1135-1138 (emphasis added); *See*

4

*also, In re Balcain Equipment Co.,* 80 B.R. 461, 462 (Bankr. C.D.Ill. 1987) ("security agreement should <u>clearly</u> spell out any claims to after acquired collateral") (emphasis added).

In the case at hand, the Security Agreement is devoid of *any* language similar to that required by other jurisdictions to create a security interest in "after acquired" property.  Equally important is the fact that the drafters of the Security Agreement were clearly aware of such phrasing, since they employed the "now existing", and "hereafter arising" language to *other* types of future interests to secure BSE's loan, but specifically elected not to do so when it came to future contracts like the Cives/BSE Contract.[6]

Blacksmith's reliance upon *Front Row Seating, Inc. v. New England Concerts, Ltd.*, 333 Mass. App.Ct. 945, 602 NE2d 1103 (1992), is likewise misplaced.  In *Front Row Seating*, the Appeals Court was not asked to decide whether certain property was considered "after acquired" collateral.  Rather, the Court was asked to determine which of two parties had priority over the proceeds from the sales of certain concert tickets.  The legal debate focused on whether the ticket sale transaction was governed by the UCC or simple contract rights. *Front Row Seating* at 946.  Accordingly, Blacksmith's attempt to use *Front Row Seating* to shoehorn the Cives/BSE Contract into the Security Agreement as collateral must fail.

**II. <u>BLACKSMITH'S EVIDENCE IS INADMISSIBLE AND SHOULD BE STRICKEN</u>.**

Rule 56(e) of the Federal Rules of Civil Procedure provides that, "Supporting and opposing affidavits…shall set forth such facts as would be admissible in evidence.…"  *See also, Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 677 (1st Cir. 1967)(a "fundamental" requirement of Rule 56 is that the "party's position be sustained by competent and admissible evidence"). *Id.*  In Massachusetts, state courts permit the use of a motion to strike as an

---

[6] See Footnote 6 in Cives' May 7, 2007 Memorandum of Law.

5

appropriate vehicle for purging inadmissible statements from a summary judgment record. *See, e.g., Madsen v. Erwin*, 395 Mass. 715 (1985). *And see*, *TLT Constr. Corp. v. A. Anthony Tappe and Assoc., Inc.*, 48 Mass. App. Ct. 1, 22 (1999) (attorney affidavit not based on personal knowledge was inadmissible hearsay).

      **A.    The Citizens/Cives Letter and Settlement Agreement
        are inadmissible parole evidence and should be stricken.**

It is well-established in Massachusetts that parole evidence may not be used to explain the terms of an unambiguous, integrated contract. *In re North American Rubber Thread Co., Inc.*, 333 B.R. 164, 168 (Bankr.D.Mass. 2005)("The parole evidence rule prohibits the consideration of extrinsic evidence when examining a contract that is not ambiguous, uncertain or equivocal….If the parties evidence an intention in the written contract itself that the agreement should be treated as fully integrated, extrinsic evidence may not be considered." quoting *Ferrari v. Family Mut. Sav. Bank (In re New Era Packaging)*, 186 B.R. 329, 334 (Bankr.D.Mass. 1995)). *See also, Finnerty v. Reed*, 2 Mass. App. Ct. 846 (1974) (rescript) ("[W]here, as here, the writing shows on its face that it includes the entire agreement of the parties, its terms connot [sic] be varied by parole evidence.").

In the instant matter, the Security Agreement contains an integration clause that makes it clear that the document constituted the parties' **entire** agreement regarding the collateral that BSE used to secure its loan from Citizens. Section 10.9 of the Security Agreement provides in pertinent part:

> This Agreement, the Revolving Note, the Related Agreements and the documents executed and delivered pursuant hereto and thereto, **constitute the entire agreement** between the parties with respect to the transactions contemplated by this Agreement, and supersede all prior written or oral understandings, agreements and commitments with respect to the subject matter hereof and/or therefore, all of which prior understandings,

agreements and commitments are merged into this Agreement, the Revolving Note, and the Related Agreements.  (emphasis added)[7]

Additionally, Blacksmith does not and cannot argue that the terms of the Security Agreement are ambiguous or uncertain.  To the contrary, Blacksmith claims that the terms of the Settlement Agreement are crystal clear, pointing, incorrectly, to the definition of numerous contract terms such as "Obligations," "Payment Intangibles" and "Proceeds".

Blacksmith cannot have it both ways.  It cannot, on one hand, argue that the very terms of the Security Agreement clearly provide BSE with a security interest in the Cives/BSE Contract, while on the other hand, seek to introduce the Citizens/Cives Letter and the Settlement Agreement as extrinsic evidence of the parties' intent.  *See, In re North American Rubber Thread Co., Inc.*, 333 B.R. at 168 (court refuses to consider extrinsic evidence because the contract at issue is unambiguous and contains an integration clause). Accordingly, the Citizens/Cives Letter and Settlement Agreement are inadmissible parole evidence and should be stricken.

### B. The Citizens/Cives Letter and Settlement Agreement are inadmissible hearsay and should be stricken.

Blacksmith offers the Citizens/Cives Letter and the Settlement Agreement into evidence for the truth of their contents and thus, they are both inadmissible hearsay.  *Com. v. Keizer*, 377 Mass. 264, 269 n. 4 (1979)("hearsay is an extrajudicial statement offered to prove the truth of the matter asserted.").

Blacksmith offers these documents through the affidavit of its attorney, Guy E. Guarino.  However, Mr. Guarino fails to swear to *any* set of facts that would make either document admissible under a recognized hearsay exception.  *See Com. v. Dew*, 443 Mass. 620, 630 (2005)(hearsay evidence is "clearly inadmissible" unless it conforms to a hearsay exception).

---

[7]  See Section 10.9 of the Security Agreement attached to the Affidavit of Steven Bazarian as **Exhibit C.**

Mr. Guarino merely states that the Citizens/Cives Letter that is attached to his affidavit is "a true and complete copy" of that document. *Id.* at ¶3.  Notably, he makes no representations whatsoever concerning the Settlement Agreement other than to say that it is attached to his Affidavit. *Id.* at ¶14.  As a result, the Citizens/Cives Letter and the Settlement Agreement are improperly authenticated and inadmissible hearsay not within any exception.  Fed.R.Civ.P. 56(e); *Morrissey*, 379 F.2d at 677; *Madsen*, 395 Mass. at 712.

### C. The Settlement Agreement is Irrelevant.

Even assuming, *arguendo*, that the Settlement Agreement is admissible, it fails to support Blacksmith's position that BSE and Citizens intended for the Cives/BSE Contract to be "after-acquired" collateral as **neither Citizens nor BSE were parties to the Settlement Agreement**. Accordingly, any representations or inferences by *BSE* or the other signatories to the *Settlement Agreement* are irrelevant to the intent of *Blacksmith* and *Citizens* when entering into the *Security Agreement*.

### CONCLUSION

Blacksmith's claim for breach of contract must fail because the undisputed material facts establish that Blacksmith has no right to enforce the Cives/BSE Contract.  Blacksmith is not a party to, or a third-party beneficiary of, the Cives/BSE Contract.  Further, Blacksmith has no rights in, nor did it receive an assignment of any rights in, the Cives/BSE Contract from Citizens.  BSE did not enter into the Cives/BSE Contract until six months after it entered into the Security Agreement and that Agreement does not contain an "after-acquired" property clause.  As such, summary judgment must enter in favor of Cives on Blacksmith's sole remaining claim of breach of contract.

Additionally, Blacksmith's attempt to introduce the Citizens/Cives Letter and the Settlement Agreement into evidence should not be permitted inasmuch as they are parole, inadmissible hearsay and not properly authenticated. Accordingly, these documents and all portions of Blacksmith's Opposition that rely upon them should be stricken.

## REQUEST FOR ORAL ARGUMENT

Cives respectfully requests oral argument on its Motion For Summary Judgment.

CIVES CORPORATION

By its attorneys,

July 9, 2007

/s/ Joseph A. Barra
Joseph A. Barra (BBO # 632534)
jbarra@seyfarth.com
Stephen C. Bazarian (BBO # 553148)
sbazarian@seyfarth.com
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
Telephone:   (617) 946-4800
Telecopier:   (617) 946-4801

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system on July 9, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Stephen C. Bazarian
Stephen C. Bazarian

BO1 15857966.1